IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF NEW MEXICO

GERMAINE A. HERRERA,
ex rel. her deceased spouse,
JOE P. HERRERA,

      Plaintiff,

v.                                                                                                                                           CIV 17-1125 JHR

NANCY A. BERRYHILL,
Acting Commissioner of Social Security,

      Defendant.

## **MEMORANDUM OPINION AND ORDER**

This matter comes before the Court on Plaintiff Germaine A. Herrera's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 18], filed June 15, 2018. Pursuant to 28 U.S.C. § 636(c) and Federal Rule of Civil Procedure 73(b), the parties have consented to the undersigned Magistrate Judge to conduct dispositive proceedings in this matter and enter final judgment. [Docs. 5, 6, 7]. Having reviewed the parties' submissions, the relevant law, and the relevant portions of the Administrative Record,[1] the Court will grant Mrs. Herrera's Motion.

### I.    INTRODUCTION

The claimant in this social security disability appeal, Joe P. Herrera, was awarded benefits by the Administrative Law Judge ("ALJ"), below. However, the ALJ's decision was only "partially favorable," insofar as the ALJ determined that Mr. Herrera became presumptively disabled on December 23, 2013, but not prior to that date. *See AR* at 27-43. In reaching this

---

[1] Documents 11 through 11-39 comprise the sealed Administrative Record ("*AR*"). The Court cites the Record's internal pagination, rather than CM/ECF document and page number.

conclusion, the ALJ relied on the opinions of a medical consultant, Jack Bentham, Ph.D.,[2] who in turn based his opinions on the diagnoses and opinions of one of Mr. Herrera's treating psychiatrists, Richard Laughter, M.D. *AR* at 42. Most basically, Dr. Bentham, relying on Dr. Laughter's diagnoses, opined that Mr. Herrera met a listing as of December 23, 2013, due to his diagnosis of Post-Traumatic Stress Disorder ("PTSD"). *See AR* at 41-42, 153. However, in finding that Mr. Herrera had no mental limitations prior to December 23, 2013, the ALJ rejected the opinions and diagnoses of Mr. Herrera's treating psychiatrist, Edward Gilmour, M.D., who diagnosed this very condition nearly two years earlier. Mrs. Herrera argues that the ALJ's reasons for rejecting Dr. Gilmour's opinions and diagnoses are unsupported by law and substantial evidence, and this Court agrees. Therefore, the Court has no choice but to reverse the ALJ's determination that Mr. Herrera was not disabled prior to December 23, 2013, and remand this case for further administrative proceedings.

## II.     PROCEDURAL HISTORY

Mr. Herrera filed applications for disability insurance benefits and supplemental security income under Titles II and XVI of the Social Security Act on April 6, 2010. *AR* at 370-384. Mr. Herrera alleged a disability onset date of June 30, 2008, *AR* at 370, due to diabetes; chronic pain in ankles, knees and hips; and depression. *AR* at 201. The Administration denied Mr. Herrera's claims initially and upon reconsideration, and he requested a *de novo* hearing before an Administrative Law Judge ("ALJ"). *AR* at 172-195.

---

[2] Dr. Bentham's qualifications are not apparent from the ALJ's decision. The ALJ only refers to him as "a medical expert who specializes in the field of psychology." *AR* at 42. And, at the hearing, Dr. Bentham is referred to as "Board certified in clinical psychological (sic)." *AR* at 116. The Court was able to locate Dr. Bentham's qualifications only after its own search of the record. *See AR* at 365.

ALJ Miriam Fernandez Rice held a hearing on March 15, 2012 and issued an unfavorable decision on April 27, 2012. *See AR* at 51-82; 178-190. After Mr. Herrera requested review of ALJ Rice's decision, *AR* at 270, the Appeals Council remanded his case to another ALJ to, among other things, reassess the weight ascribed to Dr. Gilmour's opinions. *See AR* at 197-198. On remand, ALJ Michael Hertzig ("the ALJ") convened a second hearing on March 31, 2014, but ultimately continued it because Mr. Herrera submitted additional medical records. *See AR* at 112. Finally, the ALJ held a hearing on December 2, 2014, at which Mr. Herrera, a Vocational Expert ("VE"), and two Medical Experts, including Dr. Bentham, testified. *AR* at 114-171. Thereafter, the ALJ issued a partially favorable decision on February 20, 2015. *AR* at 27-43. Mr. Herrera requested review of the ALJ's decision by the Appeals Council, but on August 25, 2017, the Council denied his request for review. *AR* at 1-7. As such, the ALJ's decision became the final decision of the Commissioner. *Doyal v. Barnhart*, 331 F.3d 758, 759 (10th Cir. 2003). This Court now has jurisdiction to review the decision pursuant to 42 U.S.C. § 405(g) and 20 C.F.R. § 422.210(a).

A claimant seeking disability benefits must establish that he is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A); 42 U.S.C. § 1382c(a)(3)(A); 20 C.F.R. §§ 404.1505(a), 416.905(a). The Commissioner must use a five-step sequential evaluation process to determine eligibility for benefits. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).[3]

---

[3] The Tenth Circuit summarized these steps in *Allman v. Colvin*, 813 F.3d 1326, 1333 n.1 (10th Cir. 2016):

> At step one, the ALJ must determine whether a claimant presently is engaged in a substantially gainful activity. *Wall v. Astrue*, 561 F.3d 1048, 1052 (10th Cir. 2009). If not, the ALJ then decides whether the claimant has a medically severe impairment at step two. *Id.* If so, at step three, the ALJ determines whether the impairment is "equivalent to a condition 'listed in the appendix of the relevant disability regulation.'" *Id.* (quoting *Allen v. Barnhart*, 357 F.3d 1140, 1142 (10th Cir.

3

At Step One of the sequential evaluation process, the ALJ found that Mr. Herrera had not engaged in substantial gainful activity since his alleged onset date. *AR* at 34. At Step Two, he determined that Mr. Herrera had the following severe impairments through December 23, 2013: "diabetes mellitus and peripheral neuropathy." *AR* at 34. The ALJ also found that Mr. Herrera had the non-severe impairment of substance abuse. *AR* at 34. However, the ALJ added Post-Traumatic Stress Disorder ("PTSD") to Mr. Herrera's severe impairments as of the "established onset date of disability" (December 23, 2013). *AR* at 34. At Step Three, the ALJ concluded that Mr. Herrera's impairments did not meet or medically equal the regulatory "listings" prior to December 23, 2013, but that he met Listing 12.06 on and after that date. *AR* at 34, 41-42.

When a claimant does not meet a listed impairment, the ALJ must determine his residual functional capacity ("RFC"). 20 C.F.R. §§ 404.1520(e), 416.920(e). "RFC is not the *least* an individual can do despite his or her limitations or restrictions, but the *most*." SSR 96-8p, 1996 WL 374184, at *1. In this case, the ALJ determined that prior to December 23, 2013, Mr. Herrera retained the RFC to:

> perform light work as defined in 20 CFR 404.1567(b) and 416.967(b) except that he can lift and/or carry 20 pounds occasionally and 10 pounds frequently; stand/walk for 4 hours in an 8-hour workday; can sit 6 hours in an 8-hour workday; can never climb ladders, ropes, and scaffolds; can frequently climb ramps and stairs; can frequently balance, stoop, kneel, crouch, and crawl; can tolerate frequent exposure to cold and heat extremes; can frequently ambulate on uneven terrain; and can do no work at unprotected heights.

*AR* at 35. Employing this RFC at Steps Four and Five, and relying on the testimony of the VE, the ALJ determined that Mr. Herrera cannot return to his past relevant work. *AR* at 40. However, the

---

2004)). Absent a match in the listings, the ALJ must decide at step four whether the claimant's impairment prevents him from performing his past relevant work. *Id.* Even if so, the ALJ must determine at step five whether the claimant has the RFC to "perform other work in the national economy." *Id.*

ALJ determined that there were other jobs that exist in significant numbers in the national economy that Mr. Herrera could have performed before he became disabled. *AR* at 40-41. Specifically, the ALJ determined that Mr. Herrera retained the capacity to work as an addresser, toy stuffer, order clerk, final assembler, rhinestone setter, and stone setter. *AR* at 40-41. Accordingly, the ALJ determined that Mr. Herrera was not under a disability as defined by the Social Security Act from his alleged onset date to December 23, 2013, and denied benefits for that time period. *AR* at 31.

### III.     LEGAL STANDARDS

This Court "review[s] the Commissioner's decision to determine whether the factual findings are supported by substantial evidence and whether the correct legal standards were applied." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (quoting *Mays v. Colvin*, 739 F.3d 569, 571 (10th Cir. 2014)). A deficiency in either area is grounds for remand. *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012). "[T]he agency's 'failure to apply the correct legal standards, or to show [the Court] that it has done so' is 'grounds for reversal.'" *Bryant v. Comm'r, SSA*, --- F. App'x, ----, 2018 WL 6133387, at *2 (10th Cir. Nov. 23, 2018) (unpublished) (quoting *Winfrey v. Chater*, 92 F.3d 1017, 1019 (10th Cir. 1996)). "Moreover, all the ALJ's required findings must be supported by substantial evidence." *Grogan v. Barnhart*, 399 F.3d 1257, 1262 (10th Cir. 2005) (quoted authority omitted). Thus, although the Court may not reweigh the evidence or try the issues *de novo*, it must "meticulously examine the record as a whole, including anything that may undercut or detract from the ALJ's findings in order to determine if the substantiality test has been met." *Id.*

### IV.     ANALYSIS

Mrs. Herrera claims that the ALJ improperly rejected the opinions of Mr. Herrera's treating psychiatrists and treating physician in determining that he was not disabled prior to December 23, 2013. [Doc. 18, p. 2]. Because the Court agrees that the ALJ erred in rejecting the opinions and diagnoses of Dr. Gilmour, it will not address Mrs. Herrera's other claims of error "because they

may be affected by the ALJ's treatment of this case on remand." *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003); *see also Bryant*, 2018 WL 6133387, at *5 (citing *Watkins* for this proposition).

Under law, "[i]t is the ALJ's duty to give consideration to all the medical opinions in the record. . . . He must also discuss the weight he assigns to such opinions." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1161 (10th Cir. 2012) (citations omitted). Here, the ALJ gave "great weight" to the opinions of Drs. Bentham and Laughter, and relied almost exclusively on their opinions in concluding that Mr. Herrera met a Listing as of December 23, 2013. *See AR* at 42. However, the ALJ gave "little weight" to Dr. Gilmour's opinions as to Mr. Herrera's functional capacities and diagnoses because

> the record does not contain sufficient objective evidence to establish that mental impairments existed prior to the established onset date [(December 23, 2013)], aside from substance abuse disorder, and the medical experts testified the claimant's substance abuse caused no additional mental limitations. Based on the foregoing, the undersigned finds the medical evidence of record does not support the opinions of … Dr. Gilmour.

*AR* at 39.

By assigning Dr. Gilmour's opinions as to the functional limitations imposed by Mr. Herrera's mental impairments "little weight" the ALJ "effectively rejected" those opinions. *Chapo v. Astrue*, 682 F.3d 1285, 1291 (10th Cir. 2012) (equating "according little weight to" an opinion with "effectively rejecting" it); *Crowder v. Colvin*, 561 F. App'x 740, 742 (10th Cir. 2014) (unpublished) (citing *Chapo* for this proposition); *Ringgold v. Colvin*, 644 F. App'x 841, 844 (10th Cir. 2016) (unpublished) (same). It was certainly the ALJ's prerogative to do so, if warranted. However, the Tenth Circuit has cautioned that "[i]f the ALJ rejects the opinion completely, he must then give specific, legitimate reasons for doing so." *Robinson v. Barnhart*, 366 F.3d 1078, 1082 (10th Cir. 2004) (quoting *Watkins v. Barnhart*, 350 F.3d 1297, 1301 (10th Cir. 2003)).

6

Moreover, "[i]n choosing to reject the treating physician's assessment, an ALJ may not make speculative inferences from medical reports and may reject a treating physician's opinion outright only on the basis of contradictory medical evidence and not due to his or her own credibility judgments, speculation or lay opinion." *Id.* (quoting *McGoffin v. Barnhart*, 288 F.3d 1248, 1252 (10th Cir. 2002)).

Thus, in order to ensure that an ALJ properly evaluates a treating physician's opinions "case law, the applicable regulations, and the Commissioner's pertinent Social Security Ruling (SSR) all make clear that in evaluating the medical opinions of a claimant's treating physician, the ALJ must complete a sequential two-step inquiry, each step of which is analytically distinct." *Krauser v. Astrue*, 638 F.3d 1324, 1330 (10th Cir. 2011). First, the ALJ should determine whether the opinion is entitled to "controlling weight." *Watkins*, 350 F.3d at 1300. An ALJ is required to give the opinion of a treating physician controlling weight if it is both: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques"; and (2) "consistent with other substantial evidence in the record." *Id.* (quotation omitted). "[I]f the opinion is deficient in either of these respects, then it is not entitled to controlling weight." *Id.*

Because the ALJ does not affirmatively state whether Dr. Gilmour's opinions are entitled to controlling weight, it appears that he may have skipped the first step under the treating physician analysis and leapt directly to the second. In the past, this Court has held that skipping the first step in the analysis constitutes reversible error. *See Wellman v. Colvin*, CIV 13-1122 KBM, Doc. 19 (D.N.M. Dec. 3, 2014). In fact, this result appeared mandatory under Tenth Circuit law. *See Watkins v. Barnhart*, 350 F.3d 1297, 1300 (10th Cir. 2003) ("A finding at this stage (as to whether the opinion is either unsupported or inconsistent with other substantial evidence) is *necessary* so that we can properly review the ALJ's determination on appeal.") (emphasis added); *see also*

*Robinson*, 366 F.3d at 1083 (noting that the ALJ failed to expressly state whether an opinion would be afforded controlling weight); *Daniell v. Astrue*, 384 F. App'x 798, 801 (10th Cir. 2010) (unpublished) (quoting *Watkins*, 350 F.3d at 1300).

However, the Tenth Circuit has also indicated that where a reviewing court can determine that an ALJ "implicitly declined to give the opinion controlling weight" there is no ground for remand. *Mays v. Colvin*, 739 F.3d 569, 575 (10th Cir. 2014) ("Ms. Mays argues that the ALJ did not expressly state whether he had given Dr. Chorley's opinion 'controlling weight.' But the ALJ implicitly declined to give the opinion controlling weight. Because we can tell from the decision that the ALJ declined to give controlling weight to Dr. Chorley's opinion, we will not reverse on this ground."); *see also Causey v. Barnhart*, 109 F. App'x 375, 378 (10th Cir. 2004) (unpublished) ("Implicit in the ALJ's decision is a finding that Dr. Waldrop's opinion . . . is not entitled to controlling weight."); *see also Andersen v. Astrue*, 319 F. App'x 712, 721 (10th Cir. 2009) (unpublished) ("It is apparent that the ALJ concluded that these opinions were not entitled to controlling weight. Although ordinarily the ALJ should have made explicit findings to this effect . . . we are not troubled by the substance of the ALJ's determination."). Here, the ALJ's decision to ascribe Dr. Gilmour's opinion "little weight" shows that he implicitly declined to give it controlling weight because he found it to be inconsistent with other evidence in the record. Therefore, the Court hesitates to reverse the ALJ solely for failing to explicitly discuss whether Dr. Gilmour's opinion was entitled to controlling weight. *See Perez v. Colvin*, CIV 15-0429 MCA-KBM, 2016 WL 8229939, at *6 (D.N.M. Oct. 12, 2016), *report and recommendation adopted*, 2016 WL 8229937 (D.N.M. Nov. 7, 2016).

However, even if a treating physician's opinion is not entitled to controlling weight, "[t]reating source medical opinions are still entitled to deference and must be weighed using all of

the factors provided in 20 C.F.R. § 404.1527" at the second step of the ALJ's analysis. *Watkins*, 350 F.3d at 1300 (quoting SSR 96–2p, 1996 WL 374188, at *4). The Tenth Circuit has summarized these factors as:

> (1) the length of the treatment relationship and the frequency of examination; (2) the nature and extent of the treatment relationship, including the treatment provided and the kind of examination or testing performed; (3) the degree to which the physician's opinion is supported by relevant evidence; (4) consistency between the opinion and the record as a whole; (5) whether or not the physician is a specialist in the area upon which an opinion is rendered; and (6) other factors brought to the ALJ's attention which tend to support or contradict the opinion.

*Krauser*, 638 F.3d at 1331 (quoted authority omitted); *see* 20 C.F.R. §§ 404.1527(c)(1)-(6), 416.927(c)(1)-(6). An ALJ is "not required 'to apply expressly each of the six relevant factors in deciding what weight to give a medical opinion.'" *Razo v. Colvin*, 663 F. App'x 710, 715 (10th Cir. 2016) (unpublished) (quoting *Oldham v. Astrue*, 509 F.3d 1254, 1258 (10th Cir. 2007)). Rather, an ALJ must simply provide "good reasons" for the weight assigned to the treating physician's opinion. *Id.* The Court finds that this standard was not met in this case.

Dr. Gilmour was one of three psychiatrists that treated Mr. Herrera for his substance abuse disorder. As noted, the most recent treating doctor, Dr. Laughter, diagnosed Mr. Herrera with PTSD on December 23, 2013. *See AR* at 1261. He also diagnosed Bipolar Disorder, NOS, and Anxiety, NOS. *Id.* Dr. Laughter did not diagnose these disorders until his third session with Mr. Herrera, having seen him first on October 11, 2013, for medication management related to his opioid abuse, and again on December 10, 2013. *See AR* at 1246-1253. At both of these prior appointments Dr. Laughter diagnosed Mr. Herrera with opioid dependence in remission, sleep disturbance and Mood Disorder, NOS. *Id.* However, on December 23, 2013, Dr. Laughter added PTSD and Bipolar Disorder to Mr. Herrera's diagnoses. *AR* at 1261. Dr. Laughter based his PTSD diagnosis on Mr. Herrera's report of physical and emotional abuse as a child, recurrent thoughts

9

related to his mother's death, symptoms of flashbacks, nightmares, reactions to triggers, avoidance of triggers, hypervigilance, poor sleep and personality change. *AR* at 1261. Dr. Laughter's diagnoses remained consistent through March 10, 2014. *See AR* at 1295. Later, on April 4, 2014, Dr. Laughter completed a Medical Assessment of Ability to do Work-Related Activities (Mental) in which he opined that Mr. Herrera has several marked impairments as to his functional abilities. *See AR* at 1353-1354. Dr. Laughter also completed two worksheets wherein he indicated that Mr. Herrera meets Listings 12.04 (Affective Disorders) and 12.06 (Anxiety-Related Disorders). *AR* at 1355-1356. As mentioned, the ALJ gave "great weight to the opinion of Dr. Laughter," because he "is a treating psychiatrist and has an established history of providing mental health treatment to the claimant for more than 1 year." *AR* at 42.

The ALJ also gave "great weight" to the opinions of Dr. Bentham, a psychological medical expert who reviewed Mr. Herrera's medical records and testified at the final hearing. *AR* at 42. The ALJ did so because Dr. Bentham "is a medical expert who specializes in the field of psychology." *AR* at 42. Dr. Bentham testified that Mr. Herrera's PTSD met Listing 12.06 based on Dr. Laughter's diagnosis. *See AR* at 150. Dr. Bentham further testified that he agreed with Dr. Laughter that Mr. Herrera's substance abuse does not impact his PTSD diagnosis. *See AR* at 152-153. Dr. Bentham further testified that, based on his review of Mr. Herrera's records, his PTSD did not affect him until December 23, 2013, making that his "potential onset date." *See AR* at 155-156.

The Court finds little fault with the ALJ's reasoning in ascribing Drs. Laughter and Bentham's opinions great weight. However, the ALJ's reasoning for completely rejecting Dr. Gilmour's diagnoses and opinions does not withstand scrutiny. As summarized above, the ALJ's primary reason for discounting Dr. Gilmour's opinions as to Mr. Herrera's functional abilities was

that "the record does not contain sufficient objective evidence to establish that mental impairments existed prior to the established onset date, aside from substance abuse disorder, and the medical experts [(Dr. Bentham)] testified the claimant's substance abuse caused no additional mental limitations." *AR* at 39. However, as Mrs. Herrera rightly points out, Dr. Gilmour diagnosed PTSD and Bipolar Disorder, NOS, on December 29, 2011, two years before Dr. Laughter did. *AR* at 1018; *see* DSM-IV-TR, 400, 463. Dr. Gilmour based his PTSD diagnosis on Mr. Herrera's reports of flashbacks relating to his abuse as a child, just like Dr. Laughter. *See AR* at 1019-1020. In other words, the ALJ's conclusion, that there was no sufficient objective medical evidence to establish the presence of a mental impairment prior to December 23, 2013, is incorrect. Moreover, Dr. Gilmour authored a Medical Assessment of Ability to do Work-Related Activities (Mental) on March 7, 2012, that is, as Mrs. Herrera points out, fairly consistent with Dr. Laughter's. *See AR* at 1052-1053; [Doc. 18, pp. 20-21]. Additionally, Dr. Gilmour opined that Mr. Herrera met the same listings as did Dr. Laughter. *See AR* at 1055-1056.

The ALJ's omission of at least PTSD from his discussion of Mr. Herrera's mental impairments prior to December 23, 2013, is strange, as he noted "that a 'staff psychiatrist' felt the claimant's diagnosis was a 'variety of [Bipolar Disorder], as well as PTSD' in December 2011." *AR* at 39. In reality, this "staff psychiatrist" was Dr. Gilmour. *AR* at 1020. However, the ALJ determined that he could ignore Dr. Gilmour's diagnosis because "the record reflects no follow-up treatment with a psychiatrist or psychologist until October 2013." *AR* at 39. Just as the ALJ's initial reason was unsupported by substantial evidence, this reason is unsupported by law.

> [T]he regulations set out exactly how an ALJ is to determine severity, and consideration of the amount of treatment received by a claimant does not play a role in that determination. ***This is because the lack of treatment for an impairment does not necessarily mean that the impairment does not exist or impose functional limitations.*** Further, attempting to require treatment as a precondition for disability would clearly undermine the use of consultative examinations.

*Grotendorst v. Astrue*, 370 F. App'x 879, 883 (10th Cir. 2010) (unpublished) (emphasis added); *see Martinez v. Colvin*, CV 15-15-0645 LAM, 2017 WL 3600734, at *6-7 (D.N.M. 2017). In other words, the ALJ erred as a matter of law by discounting Mr. Herrera's diagnoses simply because he was not receiving treatment for them.

The ALJ's errors in weighing Dr. Gilmour's opinions harmed Mr. Herrera, for several reasons. First, the ALJ failed to determine whether Mr. Herrera's PTSD was a severe impairment at Step Two. While such an error is usually harmless, *see Carpenter v. Astrue*, 537 F.3d 1264, 1266 (10th Cir. 2008), the ALJ was still required to "consider the limiting effects of all [Mr. Herrera's] impairment(s), even those that are not severe, in determining [his] residual functional capacity." 20 C.F.R. §§ 404.1545(e), 416.945(e). However, the ALJ included no limitations from Mr. Herrera's mental impairments when formulating his RFC and, indeed, failed to even consider those impairments based on his erroneous view that there was no objective support for the conditions in Mr. Herrera's medical records. This error was not harmless, as Mr. Herrera's RFC may have been more limited for the time period predating December 23, 2013 due to his mental impairments. Moreover, considering that Mr. Herrera was determined to be presumptively disabled under Listing 12.06 on December 23, 2013, there is a very real possibility that the ALJ on remand will determine that Mr. Herrera was presumptively disabled before that date based on Dr. Gilmour's records.

## V. CONCLUSION

The ALJ in this case failed to support his reasons for effectively rejecting Dr. Gilmour's opinions and diagnoses with substantial evidence. Contrary to the ALJ's finding, there was evidence of PTSD in Mr. Herrera's medical records prior to December 23, 2013, and the ALJ erred as a matter of law by suggesting that Mr. Herrera's mental health conditions did not exist simply

because they were untreated. As such, the Court has no choice but to remand this matter for further weighing of Dr. Gilmour's opinion.

Wherefore, IT IS THEREFORE ORDERED that Plaintiff Germaine A. Herrera's Motion to Reverse and Remand for a Rehearing with Supporting Memorandum [Doc. 18], is GRANTED and the decision of the Commissioner is REVERSED AND REMANDED for further proceedings consistent with this decision.

_____
JERRY H. RITTER
UNITED STATES MAGISTRATE JUDGE
Presiding by Consent